Filed 7/14/21  P. v. Donovan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEREMIAH JAMES DONOVAN,<br><br>    Defendant and Appellant. | F081240<br><br>(Super. Ct. No. CRF43024)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Michael Chamberlain, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P.J., Poochigian, J. and Franson, J.

Defendant Jeremiah James Donovan stands convicted of assault with a deadly weapon. After his conviction was affirmed, he filed a motion for deoxyribonucleic acid (DNA) testing of evidence pursuant to Penal Code section 1405.[1] His motion was denied, and he filed a notice of appeal. He contends that we should (1) construe his notice of appeal as a timely filed petition for writ of mandate, and (2) conclude that the trial court erred in finding that (a) defendant's identity was not a significant issue in the case and (b) DNA testing would not have led to a reasonable probability of a more favorable result. The People argue that defendant's appeal should be dismissed or, if we construe the notice of appeal as a timely petition for writ of mandate, denied on the merits. We dismiss the appeal.

## PROCEDURAL SUMMARY

On April 14, 2014, the Tuolumne County District Attorney filed an amended information charging defendant with assault with a deadly weapon (§ 245, subd. (a)(1)). The amended information alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)), was on bail or his own recognizance at the time of the crime (§ 12022.1), had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§ 667, subds. (b)–(i)), had suffered a prior serious felony conviction (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, subd. (b)).

On September 3, 2014, defendant admitted the prior conviction and on-bail allegations. On September 5, 2014, the jury found defendant guilty of assault with a deadly weapon and found true the allegation that he personally inflicted great bodily injury.

On October 20, 2014, the trial court sentenced defendant to a term of 18 years in prison.[2]

---

[1] All further statutory references are to the Penal Code.

[2] On the same date, defendant was sentenced to a consecutive term of two years four months for possession of methamphetamine for sale on an unrelated case.

2.

On October 4, 2016, this court affirmed defendant's conviction.

On February 18, 2020, defendant filed a first amended motion for DNA testing and request for appointment of counsel.

On April 2, 2020, the trial court denied his motion for DNA testing without prejudice and appointed counsel " 'to investigate and, if appropriate, to file a [subsequent] motion for DNA testing ….' "

Defendant filed a notice of appeal. The notice was dated April 10, 2020, and was received on April 21, 2020, however it was not filed until May 29, 2020.[3]

## FACTUAL SUMMARY

"*Prosecution's Case*

"On January 4, 2014 at 4:31 a.m., Zane Monroe called 911 from his girlfriend, Bonnie Palmer's, house. He said to the dispatcher, '[S]omeone just split the back of my head with a flashlight hella hard' and 'I need an ambulance.' He said 'Miah' was the person who hit him and there was someone else with Miah. Monroe explained Miah accused him of stealing a sluice box. He then stated that he was 'preparing to fight for [his] life' and was 's-s-seriously bleeding.'

"Sheriff's Deputy Brandon Green responded to the call. When he arrived, he noticed a large gash on the right side of Monroe's head. Monroe told Sheriff's Sergeant Eric Erhardt, who also responded to the call, that Miah hit him. Monroe was taken to the hospital where he received approximately seven staples for his injury.

"Deputy Green then interviewed Palmer. She said she was asleep when she heard someone yelling outside of her residence. She tried to wake Monroe and then heard someone enter the house through the front door. She recognized the yelling voice to be Miah's, whom she also identified as [defendant]. Monroe went to the living room and began arguing with Miah so loudly about a sluice box that Palmer told them to take it outside. After the men went outside, Palmer said she heard a loud clink and looked out the window and saw Miah standing over Monroe with a dark object which she thought may have been a flashlight. She did not

---

[3] The proof of service was dated April 16, 2020, and the envelope was postmarked April 17, 2020.

actually see Monroe get hit.  She then saw Miah and the person he was with walk down the driveway and then heard the sound of a quad or dirt bike start up.

"Deputy Green and Deputy Robert Nikiforuk then went to [defendant]'s house and noticed a sluice box and one or two dirt bikes out front.  They made contact with his wife, Thoris Donovan, who said [defendant] left around 1:30 a.m. that morning to go to a neighbor's house and was gone less than an hour.  Deputy Nikiforuk then contacted [defendant], who said he had been home all night, except that he had gone to a friend's house down the street for a short period of time.

"Sergeant Erhardt advised [defendant] of his *Miranda*[4] rights.  He denied going to Monroe's house and denied hitting him, and continued these denials even after being confronted with accusations by Monroe and Palmer.  The officers found a flashlight next to the kitchen sink and located a gray plaid shirt matching the clothing description given by Monroe and Palmer.

"Monroe was subpoenaed for trial, but did not appear.  Instead, the prosecutor introduced the 911 call made by Monroe.

"At trial, Palmer characterized [defendant] as a 'good friend,' and stated they called each other cousins even though they were not related.  On the witness stand, she denied knowing who Monroe was arguing with and stated that she did not know who hit him.  She explained she had a bad memory because of head trauma from a car accident and also because of a brain tumor."

"*Defense [Case]*

"A recording of a call made by Monroe to defense counsel's office on August 8, 2014, was played for the jury.  In the call, Monroe said he was aware the call was being recorded.  He said all he remembered of the incident was that he was asleep in bed when he was struck in the back of the head.  He denied knowing who hit him and what he was hit with.  He said Palmer does not know what happened either, because she was asleep next to him.  He said he told the police he fingered [defendant] because he was angry with him because of problems that they had in the past.  He admitted to taking a sluice box without consent, but nevertheless said he did not think [defendant] would hit him with a 'flashlight.'  But

---

[4]     *Miranda v. Arizona* (1966) 384 U.S. 436.

immediately after saying that, he said that he did not know what hit him. He then added he did not know [defendant] to be violent. He concluded by saying he was 'sorry for all the trouble.' "

## DISCUSSION

Section 1405, subdivision (a) provides: "A person who was convicted of a felony and is currently serving a term of imprisonment may make a written motion, pursuant to subdivision (d), before the trial court that entered the judgment of conviction in his or her case, for performance of forensic deoxyribonucleic acid (DNA) testing."

Section 1405, subdivision (g) directs the trial court to grant the motion for DNA testing if eight conditions are met. At issue here are the third and fifth conditions. Subdivision (g)(3) requires the moving party to establish that "[t]he identity of the perpetrator of the crime was, or should have been, a significant issue in the case." (§ 1405, subd. (g)(3).) Subdivision (g)(5) requires the moving party to establish that "[t]he requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction. The court in its discretion may consider any evidence whether or not it was introduced at trial." (§ 1405, subd. (g)(5).) Here, the trial court denied defendant's motion, finding neither the third nor the fifth condition was established.

"An order granting or denying a motion for DNA testing" is not appealable and is "subject to review only through petition for writ of mandate or prohibition …. The petition [must] be filed within 20 days after the court's order granting or denying the motion for DNA testing. In a noncapital case, the petition for writ of mandate or prohibition shall be filed in the court of appeal." (§ 1405, subd. (k).)

As a threshold matter, defendant did not file a petition for writ of mandate or prohibition within 20 days after the trial court's denial of his motion for DNA testing. Instead, he mailed—and the trial court received—a notice of appeal within 20 days of the

5.

denial of his motion. Defendant contends we should treat this appeal as a constructively filed petition for writ of mandate. We disagree.

The constructive filing doctrine can be applicable in the section 1405, subdivision (k) context under appropriate circumstances. (*In re Antilia* (2009) 176 Cal.App.4th 622, 630–631.) The "doctrine was developed to 'alleviate the harshness' of … [an otherwise unforgiving] jurisdictional rule in compelling circumstances." (*Antilia*, at p. 631.) The People argue that the constructive filing doctrine is inapplicable here because no compelling or unusual circumstances require its application.[5] Here, the People argue, the fault for defendant's failure to file a petition for writ of mandate lies only with defendant. He did not fall victim to an attorney who misled him regarding the sufficiency of a notice of appeal to preserve his rights under section 1405 (*Antilia*, at pp. 631–632), there was not a lack of clarity regarding nonappealability of an order pursuant to section 1405 (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401), and no institutional hurdle or malfeasance by prison personnel prevented defendant from filing an appropriate petition (*People v. Slobodion* (1947) 30 Cal.2d 362, 366). No compelling or unusual circumstances require application of the constructive filing doctrine. We will therefore dismiss defendant's appeal.

Moreover, dismissal of the appeal is also appropriate because, even if we considered the merits of defendant's petition, we would conclude that the trial court's order need not be disturbed. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 745 [where a party requests that a notice of appeal be construed as a petition for writ of mandate, but the petition would be denied on its merits, the appeal should be dismissed].)

---

[5]     The People also contend that, even if we treat defendant's notice of appeal as a petition for writ of mandate, it was untimely because it was not filed within 20 days of the order denying his motion as required by section 1405, subdivision (k). However, defendant mailed the notice within 20 days and it was received by the trial court within 20 days. The trial court simply did not mark the notice "filed" until outside of the 20-day period. We cannot fault defendant on that account.

We agree with the trial court's assessment that defendant's identity as the perpetrator of the crime was not, and should not have been, a significant issue in the case or that favorable DNA testing results would have raised a "reasonable probability" of a more favorable result. (§ 1405, subd. (g)(3), (5); *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.) The term "reasonable probability" as used in section 1405, subdivision (g)(5) has the same meaning as it does under *Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Watson* (1956) 46 Cal.2d 818. (*Richardson*, at p. 1050.) In other words, the condition set out in section 1405, subdivision (g)(5) is satisfied if favorable DNA results, in light of all the evidence, would lead to the conclusion that a more favorable verdict would be reached by " 'a probability sufficient to undermine confidence in the outcome' " or " 'a *reasonable chance*, more than an *abstract possibility*.' " (*Richardson*, at p. 1050.)

Here, as the trial court noted, Monroe identified defendant as the assailant in the 911 call and Monroe and Palmer identified defendant as the assailant to the investigating officers. "Both described [] defendant as a close friend, whom they knew well." Monroe described defendant as having accused him of stealing a sluice box and having hit him with a "Mag-Lite" style of flashlight. Palmer described recognizing defendant's voice before she saw him, hearing the argument between defendant and Monroe regarding the sluice box, directing the two arguing men to go outside, and later hearing "a loud clink" and seeing defendant wearing a plaid shirt and "standing over" Monroe "with a dark object which she thought may have been a flashlight." Defendant and another person then left Palmer's home on a "dirt bike" or "quad." When officers went to defendant's home, they "noticed a sluice box and one or two dirt bikes out front." Inside defendant's home, the officers found a flashlight and a plaid shirt matching the descriptions that Monroe and Palmer had given to the officers. Despite Monroe's nonappearance at trial and Palmer's recantation, the evidence established that defendant was the assailant. As the trial court noted, "[t]his was not a close case." There is no reasonable probability that

an absence of Monroe's DNA on the flashlight, sluice box, or plaid shirt would have resulted in a better outcome for defendant.  (*Richardson v. Superior Court*, *supra*, 43 Cal.4th at p. 1050.)  Therefore, for that separate reason, we dismiss defendant's appeal and do not construe it as a petition for writ of mandate.

## <u>DISPOSITION</u>

Defendant's appeal is dismissed.